**SKIP KIRCHDORFER, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 690–83C.

United States Claims Court.

Dec. 2, 1988.

Laurence J. Zielke, Louisville, Ky., for plaintiff.

John S. Groat, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant.

## ORDER

NETTESHEIM, Judge.

Plaintiff Skip Kirchdorfer, Inc. ("plaintiff"), has applied under the Equal Access to Justice Act, 28 U.S.C. § 2412(a), (d)(1)(A) (Supp. III 1985) (the "EAJA"), for an award of its costs and attorneys' fees and expenses. Defendant has opposed, plaintiff has responded, the parties have been heard, and supplemental briefing has been received.

## BACKGROUND

On April 7, 1988, pursuant to an opinion issued on April 6, 1988, judgment was entered for plaintiff in the amount of $274,-696.65, together with interest in accordance with the Contract Disputes Act, 41 U.S.C. § 611 (1982), from September 24, 1982, until payment thereof, and costs pursuant to RUSCC 54(d).[1] *Skip Kirchdorfer, Inc. v. United States*, 14 Cl.Ct. 594 (1988). Familiarity with this fact-intensive opinion is presumed. It memorialized findings and legal conclusions after a trial confined to damages following reversal by the Federal Circuit of a decision on liability in defendant's favor upon the parties' cross-motions for partial summary judgment. Plaintiff al-

---

1. Plaintiff's EAJA application seeks only those costs submitted in its bill of costs that defendant contested.

ready has been compensated for most of its costs.

By its EAJA application, plaintiff seeks an award of costs in the amount of $5,998.84 (travel, subsistence, and document transport) and attorneys' fees in the amount of $65,946.25. Plaintiff also asks for an award of expenses in the amount of $28,514.03 billed by and paid to the accounting firm of Jones, Nale & Mattingly for the analysis and expert witness fees of R. Wayne Stratton. Expenses are also claimed for a study by Touche Ross & Co. ("Touche Ross") in the amount of $33,024.00 and expert witness fees of Touche Ross' Darrell J. Oyer in the amount of $23,307.00. Plaintiff's application is in the total amount of $156,790.12.

Plaintiff contends that the litigation position of the United States was not "substantially justified" in that it was based solely on a total cost method of calculating damages which is disfavored and was rejected by the court. *Skip Kirchdorfer, Inc.*, 14 Cl.Ct. at 606. Because of defendant's recalcitrance in urging this approach, plaintiff argues that it was required to defend against the total cost method. According to plaintiff, defendant unreasonably forced plaintiff to incur attorneys' fees and expenses, including testimony of expert witnesses, the cost of an expert study of its damages, and an expert analysis of the total cost approach. Defendant's litigation position that plaintiff was entitled to nothing, plaintiff further argues, was unreasonable in light of the court's admonitions, plaintiff's substantial success on the merits, and the complete rejection of defendant's total cost methodology.

Defendant responds that its defense of plaintiff's original claim of $678,179.61 substantially reduced plaintiff's entitlement to $274,696.65 and that defendant's litigation position was therefore reasonable. Defendant contends that its position caused the court to reject both plaintiff's methodology for determining damages and its application.

## DISCUSSION

In addition to authorizing an award of its costs to a prevailing party, 28 U.S.C. § 2412(a), the EAJA mandates an award of attorneys' fees and other expenses "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." § 2412(d)(1)(A). "[F]ees and other expenses" are defined to include "the reasonable expenses of expert witnesses, the reasonable cost of any study [or] analysis ... which is found by the court to be necessary for the preparation of the party's case," as well as "reasonable" attorneys' fees. § 2412(d)(2)(A).

Although an award of costs to the prevailing party under section 2412(a) is discretionary with the court, defendant has the burden of establishing under section 2412(d)(1)(A) that its litigation position was substantially justified in order to defeat recovery of attorneys' fees and expenses, assuming that it is not found that special circumstances make an award unjust. *See generally McCarthy v. United States*, 1 Cl.Ct. 446, 456 (1983). The standard guiding this determination was enunciated by the Supreme Court in *Pierce v. Underwood*, —— U.S. ——, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988):

We are of the view, therefore, that as between the two commonly used connotations of the word "substantially," the one most naturally conveyed by the phrase before us here is not "justified to a high degree," but rather "justified in substance or in the main"—that is, justified to a degree that could satisfy a reasonable person.

Defendant's litigation position must have a "reasonable basis both in law and fact." *Pierce*, 108 S.Ct. 2550 n. 2. The court may also examine whether defendant's position was reasonable in some aspects but not in others. Defendant's differing and discrete litigating positions may be examined separately to determine the extent of plaintiff's right to its fees and expenses. In *Devine v. Sutermeister*, 733 F.2d 892, 896 (Fed.Cir. 1984), the Federal Circuit stated:

Whether a court should individually evaluate each motion or issue in a case is essentially a matter of judgment for the

court, as this decision is closely tied to the unique facts of each case. It is difficult to generalize whether a "phase" is "sufficiently significant and discrete to be treated as a separate unit" for purposes of an award of attorneys fees. (Citations and footnote omitted.) The court also may examine the Government's litigation position with respect to different issues within a phase of litigation. *Devine,* 733 F.2d at 896 n. 3. Defendant was successful in attacking plaintiff's application of its damages methodology, thereby reducing the damages award. However, the total cost approach played no role in this attack, and defendant was completely unsuccessful in its efforts to have the total cost approach adopted. Consequently, the issues of defendant's attack on the application of plaintiff's damages methodology and the role of the total cost approach are separate.

1. *Defendant's attack on plaintiff's damages methodology and the role of the total cost approach*

■ Despite the court's admonitions throughout the proceedings after remand, defendant insisted that "total cost" was the only method for determining damages and that under this approach plaintiff was entitled to no recovery. In the pursuit of this approach, defendant elected to file a summary judgment motion on the issue of damages. An unpublished order entered on May 29, 1987, denied defendant's motion and warned that the total cost approach was not a legitimate theory for defendant to sponsor in this case.

Defendant continued to insist that the total cost approach was the only measure of entitlement. Incident to trial defendant was advised that the total cost approach would not be considered favorably and that it was only to be used if no other method for determining damages was available. On this basis the court rejected defendant's total cost approach after trial. *See Skip Kirchdorfer, Inc.,* 14 Cl.Ct. at 606. Despite defendant's efforts in defending this EAJA application to resuscitate its total cost approach as reasonable in both law and fact, trial confirmed the bankruptcy of

defendant's litigation position that total cost was an appropriate measure of damages, let alone the only one.

Plaintiff claims that the fees and expenses associated with Mr. Stratton's development of plaintiff's methodology for preparing its damages, Touche Ross' validation of the application of that methodology, and Messrs. Stratton's and Oyer's analysis of the total cost approach were necessitated by defendant's intransigence and its refusal to accept plaintiff's methodology unless further verified. During 1984, before the parties cross-moved for summary judgment on the issue of liability, plaintiff retained Mr. Stratton to develop a methodology for determining the cost of a service call as a means to establish all damages incurred by performing excess compensable service calls. Mr. Stratton's cost per service call figure was multiplied by the number of excess compensable service calls to determine plaintiff's damages. Plaintiff contends that it should be awarded Mr. Stratton's expenses since defendant refused to adopt plaintiff's methodology "while clinging to its total cost defenses." Plf's Br. filed Oct. 11, 1988, at 7. Defendant's refusal to relinquish its total cost defense, however, does not negate the fact that defendant effectively reduced plaintiff's damages by alternative means. Mr. Stratton was a necessary actor in proving plaintiff's damages, and defendant did not act unreasonably by attacking the application of his methodology. It was plaintiff's burden to prove its damages with sufficient evidence establishing that such damages were caused by defendant's breach. *Boyajian v. United States,* 191 Ct.Cl. 233, 239, 423 F.2d 1231, 1235 (1970). Mr. Stratton, however, also was required to rework his damages analysis to respond to the total cost approach.

During discovery in the damages phase, Mr. Oyer of Touche Ross was retained to validate Mr. Stratton's methodology and also to address defendant's total cost theory. Plaintiff is correct in its assertion that Mr. Oyer was used to demonstrate "that the Government's position was inconsistent with DCAA [Defense Contract Audit Agen-

cy] policy and established law...." Plf's Br. filed Oct. 11, 1988, at 10. However, Mr. Oyer dedicated substantial effort in re-examining Mr. Stratton's application of his methodology, and, as was borne out at trial, this was necessary to prove up plaintiff's damages claim.

Plaintiff contends that the reduction of its damages award cannot be attributed to defendant's litigation position, so that plaintiff is entitled to all of its attorneys' fees and expenses at trial. Plaintiff reasons that the court excluded the lawn service calls *sua sponte;* that mischaracterization of certain service calls was inadvertent, but was corrected without defendant's aid; and that the reduction of service call costs due to defendant's objections was de minimis.

Defendant counters that the court agreed with defendant that there were significant problems with plaintiff's methodology and its application. Pointing to the court's substantial reduction of plaintiff's claim by more than 50 percent, defendant details the areas in which it was successful in attacking plaintiff's methodology and its application. Although the court disagrees with defendant that plaintiff's methodology was flawed, the court agrees, and found at trial, problems in the application of the methodology. It was found that plaintiff had "offered reasonably satisfactory evidence of its damages," *Skip Kirchdorfer, Inc.,* 14 Cl.Ct. at 610, but plaintiff's claim was adjusted for failure to apply the methodology correctly.

Defendant raised the problem presented by lawn service calls in its cross-examination of Messrs. Stratton and Oyer. Contrary to plaintiff's contention, the court did not identify the issue of lawn service calls, but found meritorious defendant's objection to the inclusion of lawn service calls as a compensable item. Defendant had attacked the lawn service calls as a deficiency in plaintiff's methodology, whereas the court characterized them as a problem in application which, if included, would have undermined the sample, since Mr. Stratton did not account for the lawn service calls in his pricing analysis. *Skip Kirchdorfer,*

*Inc.,* 14 Cl.Ct. at 610. Whichever way it was viewed, the objection was reasonable and ultimately led to the exclusion of a number of service calls. *Id.* at 609. Defendant's legitimate attack on the inclusion of the lawn service calls was reasonable.

Defendant successfully asserted that the universe of service calls was overinclusive due to plaintiff's noncompliance with the terms of the Stipulation for Method of Random Sample of Service Calls, Aug. 7, 1984. Plaintiff's recognition of this problem ultimately led to the exclusion of 665 service calls immediately prior to trial. However, plaintiff's reduction was inadequate, application of the methodology was still inconsistent, and the court made a further reduction of 10 percent in the total excess compensable service calls. *Skip Kirchdorfer, Inc.,* 14 Cl.Ct. at 612.

The foregoing analysis shows that defendant achieved a substantial reduction in plaintiff's damages by attacking the application of its methodology. The total cost approach served neither as a barometer of the reasonableness of any of plaintiff's damages nor as an alternative approach to establishing recoverable damages. Plaintiff is entitled to recover all of its attorneys' fees and expenses incurred in defending against defendant's total cost theory, since defendant has failed to prove that its litigation position on this separate issue was reasonable and therefore substantially justified.

### 2. *Amount of award*

The EAJA requires that an applicant submit "an itemized statement ... stating the actual time expended and the rate at which fees and other expenses are computed." 28 U.S.C. § 2412(d)(1)(B). The Federal Circuit recently remarked in *Owen v. United States,* 861 F.2d 1273 (Fed.Cir. 1988), that the Supreme Court emphasized in *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), the importance of counsel's maintaining billing time records in a manner enabling a reviewing court to identify distinct claims. "Absent records to support necessary item-

ization for the trial court's consideration, the Supreme Court stated that it would not view with sympathy an argument that the district court had abused its discretion in denying fees." *Owen,* at 1274. In *Naporano Iron & Metal Co. v. United States,* 825 F.2d 403, 404 (Fed.Cir.1987), the Federal Circuit stated that "under EAJA contemporaneous records of attorney's time and usual billing rates, as well as a breakdown of expenses, are necessary in order to determine the reasonableness of the charges...." *Owen* confirms the requirement of "contemporaneous records of the exact time spent by attorneys on a case." *Owen,* at 1275. *Naporano* absolved the court of "an obligation to reconstruct the bills" for the applicant, 825 F.2d at 405, and stated that it would be error to "simply allow less than the amount requested." *Id.* at 404–05.

Since an EAJA applicant must prove its entitlement with sufficient specificity and the court is not required to reconstruct its bills, plaintiff was instructed at oral argument to prepare a cost breakdown of its fees and expenses identifying them to compensable activities in accordance with the court's ruling that defendant's litigation position on the total cost approach was not substantially justified. *See* Order entered on October 28, 1988. *Naporano* and *Owen* contemplate a contemporaneous breakdown of attorney time, but not clairvoyance in billing to attribute time spent to specific issues that may later be culled out for compensation in an EAJA application. Defendant was afforded an opportunity to comment on plaintiff's apportionment (since defendant in its response to plaintiff's application had not taken issue with the rates for attorneys and experts).

After the court limited plaintiff's award to its defense against the total cost approach, plaintiff sought the following fees and expenses and costs in its "Supplemental Breakdown":

1) $21,969.00 for defending against defendant's motion for summary judgment on damages. Defendant does not object to $20,431.51 for which an itemized billing at $75.00 per hour was provided with plaintiff's application. Plaintiff also claimed an additional $1,537.50, representing 20.5 "hours of additional attorney time" for research after June 17, 1987, "to rebut the continued pursuit by the Government of the total cost method." Plf's Br. filed Nov. 22, 1988, at 2. Defendant is correct that an itemized breakdown was not submitted, and the time cannot be identified to the itemized billing already on file. (For example, "Research at U of L" is not helpful.) Therefore, an award of the additional amount cannot be supported consistent with *Naporano.*

2) $4,521.25 for "[r]esistance to the DCAA Audit." Plf's Br. filed Nov. 22, 1988, *id.* The claim must be denied as the court made rulings throughout the summer of 1987 sustaining defendant's discovery of plaintiff's records for the purpose of defending against the Stratton analysis. As defendant points out, these rulings are law of the case. The discovery may have aided defendant's total cost approach, but the type of documentation sought was seminal to plaintiff's own damages theory. Plaintiff has not attempted to allocate its time for this discovery, as it did with category 5, pretrial preparation, in any event.

3) $3,880.25 for pretrial conferences with expert witnesses. Plaintiff claims that it spent 51.75 hours of attorney time conferring with Messrs. Stratton and Oyer between July 28, 1987, and January 18, 1988, to rebut the total cost approach. Relying on *Naporano,* defendant argues that contemporaneous billing records are lacking. Plaintiff's application details its attorney time by date, time spent, and task and identifies meetings or telephone conversations with these experts. However, the court is unable to extricate from the itemized billing submitted with plaintiff's application sufficient references to Messrs. Stratton and Oyer to support anything but a speculative award. This is because the entries for the pertinent time periods referring to these witnesses by name do not total 51.75 hours, and from the trial the court ascertained that much of their pretrial preparation was devoted to supporting plaintiff's damages claim, not rebutting defendant's total cost approach.

4) $900.00 for depositions of defendant's total cost witnesses. This item is disallowed since plaintiff did not apportion its time between the Stratton analysis and total cost approach, although the depositions covered both. The court is not required to analyze the deposition transcripts further to sustain some portion of the claim.

5) $2,550.00 for attorney pretrial preparation. Of the 68 hours documented as pretrial preparation, plaintiff claims that one half of the time was expended on the total cost approach. This allocation is reasonable, given the amount of time wasted at trial on the issue and counsel's carefully prepared demolition of defendant's total cost presentation. Defendant complains that a breakdown was not furnished; a review of the breakdown previously on file confirms the validity of this amount.

6) $5,400.00 for 72 hours of attorney trial and trial preparation time between January 21–26, 1988, when trial was held. The itemization is adequate. However, most of the trial effort of plaintiff's counsel was expended in presenting plaintiff's case or defending during defendant's cross-examining on the Stratton analysis. One day, or 16 hours, will be allowed, for a total of $1,200.00.

7) $6,380.00 for Mr. Stratton's expert fees incurred in responding to the total cost approach and $20,207.00 for Mr. Oyer's fees on this subject. The court finds that the reasonable expenses of these experts were necessary for the preparation of plaintiff's defense against the total cost approach. Defendant does not object to Mr. Stratton's estimate of the apportionment of his time. Mr. Oyer's estimate that 91 percent of his time was expended on the total cost defense, challenged by defendant, does not square with either the amount of Touche Ross' report on the subject (which was billed separately) or the substance of Mr. Oyer's testimony about his review of defendant's total cost analysis. Defendant would deny any award on this basis, but such a draconian result is not called for. The court finds, based on the nature of Mr. Oyer's testimony of his total cost review, that an award equal to 30 percent of his fees of $23,307.00, or $6,992.10, is fully supported.

8) $5,998.84 for items in plaintiff's cost bill that were not awarded by the Clerk of the Court upon plaintiff's bill of costs. Defendant responds that no cost breakdown was provided, a ridiculous position in light of the itemized statement provided with plaintiff's EAJA application. However, the statute on costs and case law do not allow costs of transporting documents for depositions and travel of attorneys and party representatives in connection with depositions. *See Massachusetts Fair Share v. LEAA,* 776 F.2d 1066, 1069–70 (D.C.Cir. 1985) (travel expenses denied); *NAACP v. Donovan,* 554 F.Supp. 715, 719 (D.D.C. 1982) (local transportation expenses denied). *See generally* RUSCC Appendix I.

### 3. *Award of fees and expenses in connection with EAJA application*

This court ruled in *United Construction Co. v. United States,* 11 Cl.Ct. 597, 602 (1987) (EAJA application), that a successful applicant is entitled to a *pro rata* share of the attorneys' fees and expenses incurred in preparation of its EAJA application. Here, plaintiff is entitled to approximately 25 percent of the amount ($156,790.12) prayed for in its EAJA application. Pursuant to the October 28, 1988 order, plaintiff has allocated its itemized fees and expenses, and defendant has exercised its right of objection. In order to avoid relitigating the reasonableness of defendant's litigation position in defending against the entire application, for the reasons discussed in *United Construction,* plaintiff is awarded 25 percent of its itemized fees and expenses on its EAJA application totaling 23.25 hours, or $1,743.75. Defendant concedes that sufficient billing information has been submitted for 23.25 hours. The balance sought by plaintiff is presented in a format found deficient by the Federal Circuit in *Owen,* 861 F.2d at 1275. Plaintiff's award for this item is $435.94.

### CONCLUSION

Based on the foregoing, defendant has demonstrated that its litigation position in

attacking the application of plaintiff's damages methodology was reasonable, but has failed to demonstrate that its litigation position relying on a total cost approach to defend against plaintiff's damages claim was reasonable and therefore substantially justified. Moreover, the court is aware of no special circumstances that would make an award of attorneys' fees and other expenses unjust. Plaintiff's application for attorneys' fees and expenses and costs is granted in part and denied in part, as follows:

| | | |
|---|---|---|
| 1. | Summary judgment on damages | $20,431.51 |
| 2. | Defending against DCAA audit | –0– |
| 3. | Pretrial conferences with experts | –0– |
| 4. | Depositions of total cost witnesses | –0– |
| 5. | Pretrial preparation | 2,550.00 |
| 6. | Trial time | 1,200.00 |
| 7. | Stratton & Oyer expert fees | 13,372.10 |
| 8. | Cost bill | –0– |
| 9. | EAJA application | 435.94 |
| | TOTAL | $37,989.55 |

The Clerk of the Court shall enter an award in the total amount of $37,989.55.

IT IS SO ORDERED.

No costs on the application.