UNITED STATES of America, Plaintiff,

v.

UNDETERMINED QUANTITIES OF AN ARTICLE OF DEVICE, Defendant,

and

Metrex Research Corporation, Claimant.

Civ. A. No. 91–B–2019.

United States District Court,
D. Colorado.

Aug. 28, 1992.

Michael J. Norton, U.S. Atty., Paul J. Johns, Asst. U.S. Atty., Denver, Colo., for plaintiff.

David G. Palmer, Gibson, Dunn & Crutcher, Denver, Colo., James M. Picozzi, Howard F. Harrison, Nossaman, Guthner, Knox & Elliott, Irvine, Cal., for claimant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Claimant Metrex Research Corporation (Metrex) moves for its attorney fees and expenses incurred in this forfeiture action under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1). The issues are adequately briefed and oral argument will not materially aid their resolution. Because the position of the United States was not substantially justified, Metrex' motion for attorney fees and expenses is granted. However, Metrex claims fees and expenses in excess of those allowed by the EAJA and, therefore, its application will be reduced accordingly.

The United States filed this civil forfeiture action on November 19, 1991 alleging violations of the Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 301, *et seq.* In its verified complaint, the United States claimed that Metrex' products were misbranded within the meaning of the FDCA, 21 U.S.C. § 352(*o*) "in that a premarket notification was not submitted prior to marketing as required by 21 U.S.C. § 360(k) and 21 CFR §§ 807.81 and 807.97." However, it is undisputed that Metrex had, in fact, submitted a premarket notification (a 510(k) report) on April 25, 1991.

On November 21, 1991, the Colorado Department of Health placed an embargo on Metrex products based on the government's representations that Metrex' premarket notification had been rejected. The next day Colorado lifted the embargo after meeting with an FDA official who admitted that the Metrex 510(k) report had not been rejected. On November 25, 1991, the

government seized Metrex' complete inventory, again based on the factual allegation in the verified complaint that Metrex had not filed a 510(k) report.

On December 12, 1991, I heard Metrex' motion to dismiss, which I converted to summary judgment without objection by either party. At the conclusion of that hearing, I granted summary judgment for Metrex, holding there was no genuine dispute that Metrex had submitted a 510(k) report. Indeed, the government conceded that Metrex filed a 510(k) report. Therefore, I held that the products were not misbranded within the meaning of 21 U.S.C. § 352(*o*) and dismissed the action. I rejected the government's argument that a 510(k) report must be "approved" before marketing because the plain language of the statute only requires "submission" of the report.

## I.

■ The EAJA provides in relevant part that "a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ...,, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 21 U.S.C. § 2412(d)(1)(A). An award of fees and other expenses is mandatory unless the court finds that the government's position was substantially justified. *Estate of Smith v. O'Halloran,* 930 F.2d 1496, 1501 (10th Cir.1991).

The government bears the burden of showing that its position was substantially justified. *Id.* "To do so, the government must prove that its case had a reasonable basis in law and in fact." *Id.* The Supreme Court defined "substantially justified" as "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). The Court stressed that substantially justified means more than merely undeserving of sanctions for frivolousness. *Id.* at 566.

The United States asserted two positions during this action. First, in its verified complaint, the government argued that Metrex' products were misbranded under 21 U.S.C. § 352(*o*) for failure to file a 510(k) report. Second, in its pleadings opposing dismissal and summary judgment, the government argued that the FDCA required premarketing approval of the 510(k) submission. Neither of these positions are substantially justified.

The government's first position has no basis in fact. It is undisputed that Metrex filed a 510(k) report. The government's second position has no basis in law. Section 352(*o*) defines a product as misbranded if "notice or other information respecting it was not provided as required by such section or section 360(k) of this title." Section 360(k), in turn, merely requires each person who seeks to introduce a device into interstate commerce to "report" on certain matters set out in that section. By their plain language, these two sections simply do not require pre-marketing approval of a 510(k) report. Therefore, I conclude that neither of the government's positions are substantially justified in fact or in law.

Now, for the first time, the government asserts another justification for its seizure and forfeiture action. It argues that Metrex' 510(k) report was "deemed withdrawn" because FDA requested additional information which Metrex did not provide. 21 CFR § 807.87(h) empowers FDA to request additional information and provides that if the information is not provided within 30 days "the Commissioner will consider the premarket notification denied." The government relies on a July 24, 1991 letter purportedly mailed to Metrex requesting additional information. Because Metrex did not submit the requested information within 30 days, the government contends that the 510(k) report was withdrawn and, therefore, its action was justified.

This argument fails for two reasons. First, it is hotly disputed whether the July 24, 1991 letter was mailed or even created on the date indicated. The letter is unsigned and it does not request specific additional information but merely references an

alleged prior request by the Office of Device Evaluation. The government has come forward with no evidence that the Office of Device Evaluation had ever requested such information. Moreover, the letter was suspiciously generated on the last day on which the government could object to Metrex' 510(k) report. Thus, the circumstances surrounding that letter seem to indicate that it was either created automatically by a computer to preserve any objections or that it was created after the fact to justify the government's actions. In any event, the government has not met its burden of proof.

■ Second, a "position" articulated for the first time after dismissal and in opposition to an EAJA application cannot be used to justify the underlying lawsuit. *See, Abela v. Gustafson*, 888 F.2d 1258, 1264–65 (9th Cir.1989); *Devine v. Sutermeister*, 733 F.2d 892, 894 (Fed.Cir.1984). Section 2412(d)(1)(A) uses the past tense and speaks in terms of a past position. Further, section 2412(d)(1)(B) provides: "Whether or not the position of the United States was substantially justified shall be determined on the basis of the record ... which is made in the civil action for which fees and other expenses are sought." Therefore, I conclude that a position never asserted in the underlying lawsuit cannot be used as substantial justification for that action.

Accordingly, I conclude that Metrex is entitled to its attorney fees and other expenses. Next, I turn to a calculation of those fees and expenses.

## II.

The EAJA provides that attorney fees "shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." Metrex argues that a higher fee is justified because of the limited availability of qualified attorneys and because of special factors. In the alternative, it argues that the $75 per hour rate should be adjusted for cost of living increases. The government argues that qualified attorneys were not limited and there are no special factors. Further, it contends that Metrex improperly calculated the cost of living increase. I agree with the government.

In imposing a $75 per hour limit, the EAJA is not like other fee statutes. *Pierce*, 487 U.S. at 573, 108 S.Ct. at 2554. The EAJA is "not designed to reimburse reasonable fees without limit. Once the $75 cap is exceeded, neither the client paying a reasonable hourly fee nor the client paying a reasonable contingent fee is fully compensated." *Id.*

■ As to the meaning of "limited availability of qualified attorneys," the *Pierce* court held:

[T]he exception ... must refer to attorneys "qualified for the proceedings" in some specialized sense, rather than just in their general legal competence. We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of general lawyerly knowledge and ability useful in all litigation.

*Id.* at 572, 108 S.Ct. at 2554. The Court gave examples of specialized fields of practice such as patent law or knowledge of foreign law or language. *Id.* Here, Metrex' attorneys did not need any distinctive knowledge or specialized skill. As Metrex often asserts, the action involved a simple application of fact (Metrex filed a 510(k) report) to the plain language of the FDCA. Therefore, this exception is not available to increase the $75 cap.

■ Metrex also argues that the extraordinary result and the extraordinary ability of counsel are special factors that warrant an increased hourly rate. However, the *Pierce* court expressly rejected these factors as special.

We need not specify what [special factors] might be, but they include nothing relied upon by the District Court in this case. The "novelty and difficulty of the issues," "the undesirability of the case," the "work and ability of counsel,"

and "the results obtained" are factors applicable to a broad spectrum of litigation.... It was an abuse of discretion for the District Court to rely on these factors.

*Id.* at 573, 108 S.Ct. at 2554.

Next, the parties dispute the computation of the cost of living adjustment. Metrex uses the Consumer Price Index (CPI) for legal services and arrives at an adjusted hourly rate of $135.91. The government uses the CPI–All Urban Consumer (CPI–U) and arrives at an adjusted rate of $110.89. I conclude that the government's computation and use of the CPI–U is more in line with the case law and congressional intent and, therefore, hold that $110.89 is the maximum adjusted hourly rate. *See, Ramon–Sepulveda v. INS,* 863 F.2d 1458, 1463 (9th Cir.1988).

Metrex claims a total of 418.35 hours of attorney and paralegal time. The government disputes this claim for several reasons. First, the government contends that hours incurred before the date of seizure, November 25, should not be included. However, this lawsuit was filed on November 19 and I conclude that hours incurred after that date are properly compensable as necessary to the preparation of Metrex' defense. Because the government only complains of hours incurred between filing and seizure (November 19 to November 25), no reduction is warranted.

■ Second, the government argues that hours incurred after this lawsuit was dismissed (aside from the Rule 60(b) motion) are not properly compensable as necessary for the defense. I agree. After a party prevails on the merits and final judgment enters, hours billed by that party's attorneys for time spent not in defense of the judgment are not necessary to the defense. Therefore, a reduction of 10.70 hours is warranted.

■ Third, the government argues that time spent developing a "political attack" of the case and lobbying members of Congress are not properly compensable as necessary to the preparation of the defense. Again, I agree. Congress has no direct control over this case and, therefore, time spent lobbying cannot be deemed necessary for case preparation. Thus, further reduction of 14.5 hours is warranted.

Lastly, the government contends that the hours claimed are excessive, unnecessary, duplicative and generally unreasonable. The government seeks an across-the-board reduction of 50%. *See, Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), (Fees must be reasonable); *Ramos v. Lamm,* 713 F.2d 546, 552 (10th Cir.1983). Having reviewed the extensive affidavits and contemporaneous time records submitted by Metrex, I conclude that the remaining requested hours are reasonable.

In calculating a lodestar amount, I apply the rate of $110.89 to attorneys whose hourly rate was more than $110.89. Those attorneys accounted for 340.70 hours $(365.9 - 10.7 - 14.5 = 340.70)$. For attorneys and paralegals whose hourly rate was less than $110.89, I multiply their hourly rate by the number of hours claimed, for a total of $9117.25. Therefore, the total fee award is $46,897.47.

As to expenses, the government argues that costs recoverable under 28 U.S.C. § 1920 are not recoverable under the EAJA. Section 2412(d)(1)(A) awards fees and other expenses "in addition to any costs awarded under subsection (a) [dealing with § 1920]." Clearly, the statute distinguishes between § 1920 costs and "other expenses." Therefore, Metrex cannot recover costs that it could have recovered under § 1920, reducing the amount of expenses by $2110.25.

Next, the government contends that travel and related expenses incurred before and after the pendency of the underlying lawsuit are not properly compensable. I agree in part and reduce the amount of claimed expenses by another $2612.00. However, as set out above in the fee context, I will not exclude such expenses incurred between filing and seizure.

Finally, the government objects to Metrex' claim for facsimile and courier charges. In the Tenth Circuit, such charges are not recoverable under the

EAJA. *Weakley v. Bowen,* 803 F.2d 575, 580 (10th Cir.1986). Therefore, Metrex' claim is reduced by another $1,075.58. Accordingly, the total expense award is $5,740.04.

Accordingly, IT IS ORDERED THAT:

(1) Claimant Metrex' motion for award of attorney fees and expenses is GRANTED;

(2) The United States shall pay to Metrex attorney fees in the amount of $46,897.47 and expenses in the amount of $5,740.04.